# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RYAN WALTERS, in his official capacity as the OKLAHOMA SUPERINTENDENT OF PUBLIC INSTRUCTION** *and* **THE OKLAHOMA DEPARTMENT OF EDUCATION,** <br><br> *Plaintiffs*, <br><br> -v.- <br><br> **ALEJANDRO MAYORKAS, Secretary of the U.S. Department of Homeland Security, in his official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; PATRICK J. LECHLEITNER, Deputy Director and Senior Official Performing the Duties of the Director of ICE; U.S. IMMIGRATION AND CUSTOMS ENFORCMENT ("ICE"), PETER R. FLORES, Deputy Director and Senior Official Performing the Duties of the Director of U.S. Customs and Border Protection; U.S. CUSTOMS AND BORDER PROTECTION,** <br><br> *Defendants*. | Case No. CIV-25-56-JD |

...
...

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION .......................................................................................................................... 1

COMPLAINT ................................................................................................................................. 1

PARTIES ........................................................................................................................................ 5

JURISDICTION AND VENUE ..................................................................................................... 6

BACKGROUND ............................................................................................................................ 7

I.      LEGAL BACKGROUND ................................................................................................... 7

A.      The Plaintiffs are duty-bound to ensure free and appropriate education for all minor children residing within the State of Oklahoma. .......................................... 7

B.      Free and appropriate education extends to all undocumented, unaccompanied alien children residing in the State of Oklahoma. ............................................................ 7

II.     FACTUAL BACKGROUND ............................................................................................. 8

A.      The undocumented immigrant student population continues to skyrocket............. 8

B.      The large, recent, and increased influx of illegal immigrant children has come with a fiscal and logistical toll on the Oklahoma public education............................... 10

CLAIMS FOR RELIEF ................................................................................................................ 11

COUNT I (All Defendants)—MANDAMUS .............................................................................. 11

COUNT II (All Defendants)—DECLARATORY JUDGMENT .................................................. 12

COUNT III (All Defendant)—INJUNCTIVE RELIEF ................................................................ 12

CERTIFICATION AND CLOSING ............................................................................................. 13

RELIEF REQUESTED ................................................................................................................. 14

PRAYER FOR RELIEF ............................................................................................................... 14

CERTIFICATE OF SERVICE ...................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

Florida v. United States, 660 F. Supp. 3d 1239 (N.D. Fla. 2023). ................................... 2

Plyer v. Doe, 457 U.S. 202 (1982) ................................................................................... 2

## Statutes

28 U.S.C. § 1331 ............................................................................................................. 6

28 U.S.C. § 1346 ............................................................................................................. 6

28 U.S.C. § 1361 ........................................................................................................ 6, 11

28 U.S.C. § 1391(e)(1)(B) ............................................................................................... 7

28 U.S.C. § 1391(e)(1)(C) ............................................................................................... 7

28 U.S.C. § 2201(a) .................................................................................................... 7, 12

28 U.S.C. § 2202 ............................................................................................................. 6

5 U.S.C. §§ 702-703 ....................................................................................................... 6

6 U.S.C. § 279(2)(g)(2) ................................................................................................... 8

70 O.S. § 1-105 ............................................................................................................ 5, 7

## Other Authorities

Fed'n for Amer. Immigration Reform, "Illegal Immigration," available at: https://www.fairus.org/issues/illegal-immigration .................................................. 8, 9, 10

Julia Ainsley & Laura Strickler, NBC News, "Outgoing ICE direct says Biden 'absolutely' should have acted sooner to tighten the border," available at: www.nbcnews.com/investigation/outgoing-ice-director-absolutely-acted-sooner-tighten-borde-rcna186910 ...................................................................................................... 9

Madison Marino Doan, et. al., The Heritage Foundation, The Consequences of Unchecked Illegal Immigration on America's Public Schools, (Feb. 2024), available at: https://www.heritage.org/education/report/the-consequences-unchecked-illegal-immigration-americas-public-schools ............................................................................. 3

Nat'l Ctr. for Educ. Statistics, "Digest of Education Statistics," (2022), available at: https://nces.ed.gov/programs/digest/d23/tables/dt23_236.75.asp. .................................... 4

Nat'l Ctr. for Educ. Statistics, Annual Reports, "English Learners in Public Schools," (2024), available at: https://nces.ed.gov/programs/coe/indicator/cgf. ............................... 4

Ray Carter, Oklahoma Council of Public Affairs, "Oklahoma Public School Revenue Hits $13,736 Per Student" Jan. 8, 2025, available at: https://ocpathink.org/post/independent-journalism/oklahoma-public-school-revenue-hits-13-736-per-student ............................... 3

U.S. Customs & Border Protection, "Nationwide Encounters," available at: https://www.cbp.gov/sites/default/files/assets/documents/2023-Sep/nationwide-encounters-data-dictionary.pdf ................................................................................... 8

U.S. Dep't of Educ., "Data Express Data Download Tool," available at: https://eddataexpress.ed.gov/download?f%5B0%5D=file_spec%3A067&f%5B1%5D=school_year%3A2019- ............................................................................................................... 4

U.S. Dep't of Health and Human Services, Office of Refugee Resettlement, "Unaccompanied Children Released to Sponsors by State," available at: https://www.acf.hhs.gov/orr/grant-funding/unaccompanied-children-released-sponsors-state. ....................................................................................................................... 2

**Regulations**

34 C.F.R. § 300.101(a) ................................................................................................. 2, 7

**Constitutional Provisions**

Okla. Const. Art. XIII § 1 ................................................................................................ 7

U.S. Const., Preamble .................................................................................................... 1

## INTRODUCTION

At the founding of the Republic, this nation's forefathers made a promise. In drafting the Constitution of the United States, the founders ensured that government would "promote the general welfare" of all those living within this country's borders. U.S. Const., Preamble. Surely, if any of this nation's inhabitants deserve the "general welfare" of their interests protected, it is our nation's most vulnerable: Our Children.

Despite the promise long enshrined in our nation's history, the federal government has routinely failed in its duty to promote the welfare of its citizens. No where is that more evident than in the Biden Administration's abject failure to secure our nation's borders. And, when the federal government fails to uphold the sworn oaths of their respective offices, it falls to the individual states to make amends for the sins of the sovereign.

In this respect, Oklahoma's public education system—federally bound to provide *every* child who resides within the state a free and public education— must be permitted to serve the best interests of the children of the State of Oklahoma. The United States Departments of Homeland Security and Immigration and Customs Enforcement, and Education, along with United States Border Patrol and Security, must be held accountable for their failure to properly secure this nation's border. This failure has resulted in substantial financial and logistical harm to the State of Oklahoma, the Oklahoma State Department of Education, and most egregiously of all, the children of Oklahoma.

## COMPLAINT

1. The Biden-Harris Administration has "effectively turned the Southwest Border into a meaningless line in the sand and little more than a speedbump for aliens flooding

  into the country." <u>Florida v. United States</u>, 660 F. Supp. 3d 1239, 1249 (N.D. Fla. 2023).

2. While estimates vary on the impact of the border crisis, there are at a minimum millions of new unauthorized aliens present in this country.

3. Among these undocumented aliens, the U.S. Customs and Border Protection ("CBP") has encountered close to one-half of one million unaccompanied, alien children.[1] As of 2022, the estimated population of illegal immigrants in all U.S. states was 10,990,000. The estimated number of unauthorized immigrant children in 2022 was 1,230,000.[2]

4. Federal statue and Supreme Court precedent both mandate that the State of Oklahoma provide "[a] free and public education" (hereinafter, FAPE) "to all children residing in the State between the ages of 3 and 21, inclusive, including children with disabilities." 34 C.F.R. § 300.101(a). <u>See Plyer v. Doe</u>, 457 U.S. 202 (1982).

---

[1] U.S. Dep't of Health and Human Services, Office of Refugee Resettlement, "Unaccompanied Children Released to Sponsors by State," available at: https://www.acf.hhs.gov/orr/grant-funding/unaccompanied-children-released-sponsors-state (last accessed Jan. 8, 2025).

[2] These studies do not delineate the number of undocumented alien children by state.

5. According to the United States Department of Education ("DOE"), from 2021 to 2023, nearly 3,000 unaccompanied immigrant children were sent to sponsors in Oklahoma.[3]

6. Educating the estimated number of undocumented alien children imposes a significant financial burden on the State of Oklahoma. For example, the areas of English proficiency and English Language Learning (ELL) are but two examples of the multitude of instructional challenges that require additional staff and training. The estimated number of undocumented alien children also poses significant administrative and procedural obstacles, including but not limited to classroom management, transportation, and budgeting for future costs. Each of these issues will have permanent implications on the education and academic performance of students in Oklahoma public schools.[4]

7. It is estimated that Oklahoma spends more than $13,736.00 per student enrolled in its local school districts.[5] Given the approximated 3,000 undocumented,

---

[3] U.S. Dep't of Health and Human Services, Office of Refugee Resettlement, "Unaccompanied Children Released to Sponsors by State," available at: https://www.acf.hhs.gov/orr/grant-funding/unaccompanied-children-released-sponsors-state (last accessed Jan. 8, 2025).

[4] Madison Marino Doan, et. al., The Heritage Foundation, The Consequences of Unchecked Illegal Immigration on America's Public Schools, (Feb. 2024), available at: https://www.heritage.org/education/report/the-consequences-unchecked-illegal-immigration-americas-public-schools (last accessed Jan. 8, 2025).

[5] Ray Carter, Oklahoma Council of Public Affairs, "Oklahoma Public School Revenue Hits $13,736 Per Student" Jan. 8, 2025, available at: https://ocpathink.org/post/independent-journalism/oklahoma-public-school-revenue-hits-13-736-per-student (last accessed Jan. 13, 2025).

unaccompanied minors estimated to reside in Oklahoma, that results in an estimated additional cost to Oklahoma taxpayers approximately $41,208,000.00 since the start of the Biden-Harris Administration.[6] Notably, this estimate does not account for illegal immigrant children that are not unaccompanied.

8. In the 2022 school year, 5.3 million students in the United States (approx. 10%) were designated as Limited English Proficiency ("LEP").[7] Correspondingly, according to the DOE, approximately 414,451 teachers nationwide held the proper certifications to adequately educate LEP students.[8] It is estimated that nearly 100,000 additional LEP teachers will be necessary within the next 5 years.[9] Approximately 100,000 teachers are serving as LEP instructors, despite lacking the proper certification.[10]

9. More than 6,000 students in Oklahoma are designated as LEP. It is estimated that Oklahoma will need, at a minimum, an additional 1,065 properly certified teachers in the next 5 years.[11] These necessary expenses will be an additional education cost

---

[6] Nat'l Ctr. for Educ. Statistics, "Digest of Education Statistics," (2022), available at: https://nces.ed.gov/programs/digest/d23/tables/dt23_236.75.asp (last accessed Jan. 8, 2025).

[7] Nat'l Ctr. for Educ. Statistics, Annual Reports, "English Learners in Public Schools," (2024), available at: https://nces.ed.gov/programs/coe/indicator/cgf (last accessed Jan. 8, 2025).

[8] U.S. Dep't of Educ., "Data Express Data Download Tool," available at: https://eddataexpress.ed.gov/download?f%5B0%5D=file_spec%3A067&f%5B1%5D=school_year%3A2019- (last accessed Jan. 8, 2025).

[9] Id.
[10] Id.
[11] Id.

borne by state taxpayers that is directly attributable to the Biden Administration's repeated failure to properly manage immigration and secure the nation's borders.

10. The Plaintiffs are tasked with budgeting and allocating (from state and federal monies) for these increased costs and with meeting the additional teaching, tutoring, program, and other resource needs necessary to provide FAPE, which is mandated by 34 C.F.R. § 300.101. However, the allocation of federal monies available is not keeping pace with the flow of illegal immigrant children and the costs thereof.

## PARTIES

11. Oklahoma is a sovereign state of the United States of America ("U.S.A.").

12. Plaintiff Ryan Walters is the Oklahoma Superintendent of Public Instruction ("Superintendent"), the President of the State Board of Education ("SBE") and as the executive officer, controls and directs the State Department of Education ("OSDE"). See, Okla. Const. art. XIII, § 5 and Title 70 O.S. § 1-105. His office is located at the Oliver Hodge Building, 2500 N. Lincoln Blvd., Oklahoma City, Oklahoma 74105.

13. Plaintiff The Oklahoma State Department of Education ("OSDE") is the "department of the state government in which the agencies created or authorized by the Constitution and Legislature are placed and charged with the responsibility of determining the policies and directing the administration and supervision of the public school system of the state." See Title 70 O.S. § 1-105.

14. In sum and substance, the Plaintiffs are tasked with utilizing the state budget provided, and any federal monies provided, in order to educate the children of the State of Oklahoma.

15. Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security.

16. Defendant U.S. Department of Homeland Security ("DHS") is a federal executive agency responsible for enforcing federal laws governing, without limitation and as relevant to this case, border control and immigration.

17. Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of DHS and is responsible for, inter alia, preventing or prohibiting illegal immigration into the United States of America.

18. Defendant Patrick J. Lechleitner is sued in his official capacity as the Deputy Director and Senior Official Performing the Duties of the Director of ICE.

19. Defendant Peter R. Flores is sued in his official capacity as the Deputy Director and Senior Official Performing the Duties of the Director of United States Customs and Border Protection.

20. Defendant United States Customs and Border Protection (CBP) is responsible for border management and control, immigration, and border security.

## JURISDICTION AND VENUE

21. This Court has subject-matter jurisdiction over this case because it arises under the laws of the United States. See, 28 U.S.C. §§ 1336, 1346, 1361, and 2202, and 5 U.S.C. §§ 702-703.

22. An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief under 28 U.S.C. §§ 2201-02, 5 U.S.C. §§ 705-06, and its inherent equitable powers.

23. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(C) because the Plaintiffs are residents of this judicial district (and no real property is involved) and also under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the State's claims occurred in this district.

## BACKGROUND

### I.   LEGAL BACKGROUND

**A.   The Plaintiffs are duty-bound to ensure free and appropriate education for all minor children residing within the State of Oklahoma.**

24. Under federal law, the State of Oklahoma has an obligation to ensure that each minor child residing in Oklahoma is afforded free public education. <u>See</u> 34 C.F.R. § 300.101(a).

25. As Superintendent of Public Instruction, Ryan Walters has a duty to ensure that Oklahoma's children are receiving quality and necessary education. OSDE has a duty to determine the policies and direct the administration and supervision of the public school system of the state." <u>See</u> Title 70 O.S. § 1-105.

26. As part of its duty, OSDE is tasked with the distribution and allocation of the annual budget allotted by the Oklahoma legislature.

**B.   Free and appropriate education extends to all undocumented, unaccompanied alien children residing in the State of Oklahoma.**

27. "Unaccompanied alien child" is defined under Title 6, United States Code, § 279(2)(g)(2) as a child who:

    (A)    has no lawful immigration status in the United States:

    (B)    had not attained 18 years of age; and

    (C)    with respect to whom—

        (i)    there is no parent or legal guardian in the United States; or

        (ii)    no parent or legal guardian in the United States is available to provide care and physical custody.

28. An "accompanied minor" may be generally defined as a child that is accompanied by a parent, or legal guardian, and the parent or legal guardian is a U.S. citizen, or a lawful permanent resident, or is eligible for admission into the U.S. as a noncitizen, and the child is determined to be inadmissible.[12]

29. For clarification, a "family unit" represents the number of individuals (either a child under 18 years old, parent or legal guardian) who are apprehended with a family member.[13]

## II. FACTUAL BACKGROUND

### A. The undocumented immigrant student population continues to skyrocket.

---

[12] U.S. Customs & Border Protection, "Nationwide Encounters," available at: https://www.cbp.gov/sites/default/files/assets/documents/2023-Sep/nationwide-encounters-data-dictionary.pdf (last accessed Jan. 8, 2025).

[13] Fed'n for Amer. Immigration Reform, "Illegal Immigration," available at: https://www.fairus.org/issues/illegal-immigration (last accessed Jan. 8, 2025).

32. At least since 2021, a new record has been set each year for illegal immigration in the U.S.[14]

33. In fiscal year ("FY") 2021, the number of illegal alien encounters at U.S. borders was approximately 1.957 million.[15]

34. In FY 2022, the number of illegal alien encounters at U.S. borders was approximately 2.767 million.[16]

35. In FY 2023, the number of illegal alien encounters at U.S. borders was approximately 3.201 million.[17]

36. In the single month of December 2023, CBP encountered more than 371,000 illegal aliens at U.S. borders, which was the highest number of encounters ever recorded in a single month.[18]

37. According to acting ICE Director Lechleitner, the Biden Administration "should 'absolutely' have acted sooner to tighten border security to reduce the flow of migrants into the United States."[19]

38. According to acting Director Lechleitner, "the number of incoming migrants meant his agency" was "unable to do its own core mission adequately."[20] Acting Director

---

[14] Id.
[15] Id.
[16] Id.
[17] Id.
[18] Id.
[19] Julia Ainsley & Laura Strickler, NBC News, "Outgoing ICE direct says Biden 'absolutely' should have acted sooner to tighten the border," available at: www.nbcnews.com/investigation/outgoing-ice-director-absolutely-acted-sooner-tighten-borde-rcna186910 (last accessed Jan. 13, 2025).
[20] Id.

9

Lechleitner has also publicly stated that "the career people in DHS" would have preferred the Biden Administration act sooner to curtail the influx of illegal immigration.[21]

39. The U.S. was on pace to set national records for illegal immigration or illegal immigrant encounters in FY 2024.[22]

40. The approximate, total number of illegal aliens encountered since Fiscal Year 2020 is more than 9.4 million, with an estimate of those entering and evading law enforcement at 1.7 million since January 20th, 2021.[23]

41. Pursuant to CBP classifications, illegal aliens encountered at U.S. borders fall into four (4) basic categories: (a) single adults; (b) family units, (c) unaccompanied children or single minors, and (d) accompanied minors.[24]

**B.  The large, recent, and increased influx of illegal immigrant children has come with a fiscal and logistical toll on the Oklahoma public education.**

42. Ryan Walters assumed his elected office on or about January 9th, 2023.

43. Superintendent Walters, during his campaign and upon assuming office, has sought to address the costs to the Oklahoma public education system attributable to illegal immigration.

---

[21] Id.
[22] Id.
[23] Id.
[24] Id.

10

44. During his tenure in office, the Superintendent has observed a marked increase in needs, and projected needs, for additional teachers, tutors, programs, transportation, and other supporting resources necessary to educate illegal immigrant children.

45. As part of their duties, the Plaintiffs are tasked are tasked, without limitation, with the following additional, education expenses: (a) recruiting and retaining additional and bilingual teachers, tutors, and other school personnel, (b) recruiting and retaining additional school counselors to address academic concerns among the immigrant children due to insufficient prior education, and cultural differences and integration into the Oklahoma public school system, (c) increased costs in determining the actual number of illegal immigrant children that must be educated, (d) increased costs due to academic and language assessments necessary to develop a plan for educating illegal immigrant, (e) increased costs incurred to transport a greater number of children statewide via public school transport systems, (f) increased costs to determine whether the additional children need nutritional assistance via the public school system, (g) increased costs to assess the need for Individualized Education Plans ("IEP") when presented with language and cultural barriers that may result in incorrect, initial assessments.

## CLAIMS FOR RELIEF

### COUNT I (All Defendants)—MANDAMUS

46. The Plaintiffs incorporate fully by reference the preceding paragraphs as if set forth at length herein.

47. Under the Mandamus Act, the Court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

48. Defendants owe Plaintiffs a clear and nondiscretionary duty to perform their duties as commanded by their offices.

49. As a direct and proximate cause of Defendants' failure to properly secure the nation's borders, the State of Oklahoma has been irreparably harmed and continues to suffer ongoing injury.

50. A Writ of Mandamus should issue compelling the defendants to perform their duties as their offices dictate by properly securing the nation's borders to prevent the influx of undocumented aliens into this country.

### COUNT II (All Defendants)—DECLARATORY JUDGMENT

51. The Plaintiffs incorporate fully by reference the preceding paragraphs as if set forth at length herein.

52. Under the Declaratory Judgment Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

53. There is an actual controversy within this Court's jurisdiction. Therefore, the Plaintiffs seek declaratory judgment regarding all Counts and Claims set herein.

### COUNT III (All Defendant)—INJUNCTIVE RELIEF

54. The Plaintiffs incorporate fully by reference the preceding paragraphs as if set forth at length herein.

55. The Plaintiffs request that the Court issue an injunction demanding that the Defendants reimburse the Plaintiffs for all costs stemming from the State's mandatory requirement that it proved FAPE to all minor children residing therein. Such costs include, but are not limited to, (a) recruiting and retaining additional and bilingual teachers, tutors, and other school personnel, (b) recruiting and retaining additional school counselors to address academic concerns among the immigrant children due to insufficient prior education, and cultural differences and integration into the Oklahoma public school system, (c) increased costs in determining the actual number of illegal immigrant children that must be educated, (d) increased costs due to academic and language assessments necessary to develop a plan for educating illegal immigrant, (e) increased costs incurred to transport a greater number of children statewide via public school transport systems, (f) increased costs to determine whether the additional children need nutritional assistance via the public school system, (g) increased costs to assess the need for Individualized Education Plans ("IEP") when presented with language and cultural barriers that may result in incorrect, initial assessments.

## CERTIFICATION AND CLOSING

56. Pursuant to Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (a) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (b) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (c) the

factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (d) the complaint otherwise complies with the requirements of Rule 11.

**RELIEF REQUESTED**

57. The Plaintiffs respectfully request the following relief:

   a. That the Court declares that Defendant's acts, omissions, and conduct were in violation of their respective duties under federal law;

   b. That the Court compel the Defendants to take action previously and unlawfully withheld, including without limitation securing and properly monitoring U.S. borders and ensuring compliance with existing immigration laws.

   c. That the Court issue an injunction requiring the Defendants to compensate the State of Oklahoma monetary compensation for the costs incurred as a direct result of its failure to adequately perform their duties and the duties of their respective agencies;

   d. That the Court grant all other relief the Court deems just and proper, as well as reasonable attorneys' fees and the costs of this action.

**PRAYER FOR RELIEF**

WHEREFORE, premises considered, the Plaintiffs pray for the entirety of the relief requested herein.

Dated this 14th day of January 2025.

/s/ *Jacquelyne K Phelps*
Jacquelyne K. Phelps
Oklahoma Bar No. 34366
Assistant General Counsel
Oklahoma State Department of Education
2500 N. Lincoln Blvd. Ste. 500
Oklahoma City, OK 73105
Tel: 405-521-2983
Email: Jacki.Phelps@sde.ok.gov

*Counsel for Plaintiffs*

15

## CERTIFICATE OF SERVICE

  The undersigned, ATTORNEY, an attorney with the Oklahoma State Department of Education, hereby certifies that on January 14, 2025, I filed the foregoing with the Clerk of the Court using the CM/ECF System.

/s/ Jacquelyne K. Phelps
JACQUELYNE K. PHELPS
Oklahoma Bar No. 34366
Assistant General Counsel
Oklahoma State Department of Education
2500 N. Lincoln Blvd. Ste. 500
Oklahoma City, OK 73105
Tel: 405-521-2983
Email: Jacki.Phelps@sde.ok.gov

*Counsel for Plaintiffs*
