# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RYAN WALTERS, Oklahoma Superintendent of Public Instruction, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KRISTI NOEM, Secretary of Homeland Security, *et al.*, <br><br> *Defendants*. | CIV-25-0056-JD |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants' Motion to Dismiss, ECF No. 7 (the "Motion"), identified various threshold grounds for dismissal of Oklahoma's challenges to the adequacy of the federal government's efforts to enforce the immigration laws and secure the southern border. Oklahoma's response brief provides no basis to deny the Motion. Indeed, Oklahoma itself now concedes that there is no basis to order mandamus relief and it has accordingly withdrawn that claim as moot in light of the Trump Administration's "swift response to the border crisis." As to the remaining claims, which seek declaratory relief and money damages based on the Biden Administration's alleged failure to prevent an influx of undocumented schoolchildren, Oklahoma fails to overcome the grounds for dismissal defendants have identified. These claims should be dismissed because Oklahoma lacks Article III standing under binding Supreme Court precedent, and because it has not identified an applicable waiver of sovereign immunity, or even a cause of action, so the relief they seek is simply not available. Oklahoma's arguments to the contrary are meritless and, for the most part, not even responsive to these points. Accordingly, for the reasons set forth the Motion, and as discussed further below, defendants respectfully submit that this action should be dismissed in its entirety.

1

# ARGUMENT

## I. It is Undisputed that the Mandamus Claim Should Be Dismissed

Oklahoma's response brief does not dispute the grounds to dismiss Count I (the mandamus claim). Indeed, Oklahoma now "agree[s]" that it makes no sense to grant mandamus relief given "the current Administration's swift response to the border crisis." Pls.' Resp. in Opp'n to Defs.' MTD, ECF No. 8, at 1 ("Pl. Opp.") at 1 (withdrawing the Mandamus Count as moot) (quoting Defs.' Mot. to Dismiss, ECF No. 7 ("Defs.' Mot. at 2")). Accordingly, all parties agree that Count I should be dismissed.[1]

## II. The Court Should Also Dismiss Oklahoma's Claims for Declaratory and Monetary Relief for Lack of Jurisdiction and Failure to State a Claim

As discussed in the Motion, Oklahoma's challenge to the adequacy of the Biden Administration's enforcement of the immigration law is subject to dismissal because plaintiffs: (1) lack Article III standing to assert their challenge; (2) have not identified an applicable waiver of sovereign immunity that would allow this suit to proceed; and (3) have not identified a cause of action providing a right to the relief they seek. Oklahoma's response brief does not refute any of these points.

### A. Plaintiffs Lack Standing Under Article III

As defendants previously explained, Oklahoma's claims should be dismissed because it lacks standing to challenge the adequacy of the Executive Branch's enforcement of the immigration laws. In a case that is in all material respects identical to this one, the Supreme Court found that two states lacked Article III standing to challenge the adequacy of Executive Branch

---

[1] Oklahoma's brief erroneously states that the mandamus claim is in Count II rather than Count I. Pl. Opp. at 1.

enforcement of the immigration laws, despite claims that the alleged under-enforcement resulted in additional costs associated with undocumented immigrants. *United States v. Texas*, 599 U.S. 670 (2023) ("*U.S. v. Texas*"). Plaintiffs' challenge here implicates the exact same concerns as the claim rejected in *U.S. v. Texas* and is subject to dismissal on precisely the same grounds. Defs.' Mot. at 5-9. Oklahoma's response brief provides no basis to conclude otherwise.

To the contrary, Oklahoma's fleeting attempt to distinguish *U.S. v. Texas* only serves to highlight the similarities between the two cases. Quoting the Supreme Court's decision in that case, Oklahoma asserts that *U.S. v. Texas* "implicate[d] only one discreet aspect of the executive power—namely the Executive Branch's traditional discretion over whether to take enforcement actions against violators of federal law." Pl. Opp. at 4 (quoting *U.S. v. Texas*, 599 U.S. at 684). Far from providing a basis for distinction, the quoted description exactly describes the instant case as well. And for that reason, this case also raises all the same Article III concerns that the Supreme Court found dispositive in *U.S. v. Texas*. As in that case, Oklahoma's claim does not challenge any exercise of coercive power. *U.S. v. Texas*, 599 U.S. at 678. And as in that case, the claim here also runs squarely up against the Executive's Article II authority to enforce the law, *id.* at 678-79, and implicates foreign policy objectives related to discretionary enforcement in the immigration context, *id.* at 679. Finally, just as in *U.S. v. Texas*, courts lack meaningful standards by which to evaluate the Executive's Branch's enforcement choices. *Id.* at 679-80. If anything, these concerns are more pronounced in this case than they were in *U.S. v. Texas*. Defs.' Mot. at 7-9.

Plaintiffs also wrongly suggest that *U.S. v. Texas* only applies where plaintiff seeks prospective relief ordering future enforcement action by the Executive Branch but does not apply to claims challenging alleged under-enforcement in the past. Pl. Opp. at 4-5. Nothing in the logic of the decision suggests such a limitation. To the contrary, the decision turned on the nature of the

3

alleged injury, not on whether the relief sought was prospective (e.g., ordering more arrests in the future) or retrospective (e.g., providing money damages for allegedly inadequate enforcement in the past). *U.S. v. Texas*, 599 U.S. at 676-80. Indeed, at least one of the cases relied on by the Supreme Court for its holding involved a challenge like the one remaining here, in which a plaintiff sought money damages based on allegedly inadequate enforcement that had occurred in the past. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (rejecting a plaintiff's claim seeking damages under 42 U.S.C. § 1983 based on officer's failure to enforce domestic abuse restraining order).

Rather than meaningfully addressing the Court's dispositive decision in *U.S. v. Texas*, Oklahoma devotes much of its standing discussion to irrelevant issues that are not responsive to the grounds for dismissal set forth in the Motion. For example, plaintiffs focus at length on *Biden v. Nebraska*, in which the Supreme Court held that injuries to a nonprofit government corporation established by the state of Missouri constituted an injury to Missouri for purposes of Article III standing because the corporation was a public instrumentality created by the state for a public purpose. 600 U.S. 477, 489-90 (2023). The decision is irrelevant here because it did not involve a challenge to the Executive Branch's enforcement of the immigration laws and thus did not implicate the separation of powers concerns at issue here and in *U.S. v. Texas*. Defendants are not arguing (like the defendants in *Biden v. Nebraska*) that Oklahoma is improperly seeking to assert standing based on injuries to some other entity. *See id.* at 492. Instead, the fundamental problem is that Oklahoma lacks a judicially cognizable interest in the enforcement of the federal immigration laws against other people—even where (as here) Oklahoma alleges that it has suffered indirect financial injuries as a result of the federal government's alleged under-enforcement. *See U.S. v. Texas*, 599 U.S. at 676-77.

4

For similar reasons, Oklahoma's professed reliance on "organizational standing" is equally unavailing. Oklahoma appears to argue that the plaintiffs—the Oklahoma Superintendent of Public Instruction and the Oklahoma Department of Education—have "organizational standing" to seek relief based on alleged injuries to plaintiffs' "members," which members plaintiffs say consist of individual school districts in Oklahoma. Plaintiffs, however, have not cited any case in which a court has applied the organizational standing doctrine to a governmental entity like the Oklahoma Department of Education. Indeed, the doctrine has no application here because the State of Oklahoma and its agencies are not a traditional membership organization, nor do the purported "members" (i.e., school districts) have "indicia of membership" of the sort that could justify a claim organizational standing. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977). Moreover, it is well established that a "State does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982); *see Haaland v. Brackeen*, 599 U.S. 255, 294-95 (2023).

But even if organizational standing were potentially applicable here, that doctrine would not address the Article III standing problem identified in the Motion. Again, the problem plaintiffs cannot overcome is that their claimed injury is based on indirect, downstream costs incurred due to allegedly inadequate immigration law enforcement. The Supreme Court has clearly held that such injuries are not "legally and judicially cognizable" for purposes of the Article III standing. *U.S. v. Texas*, 599 U.S. at 676-77.

**B.     Sovereign Immunity Bars Oklahoma's Claims for Declaratory and Monetary Relief**

The Complaint is also subject to dismissal for lack of jurisdiction on sovereign immunity grounds. Having brought suit against federal agencies and officers in their official capacity, it is

Oklahoma's burden "to find and prove an explicit waiver of sovereign immunity." *Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992) (citation omitted); *see also Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002) ("A State, like any other entity, generally cannot pursue a suit against the Federal Government absent a congressional waiver of immunity."). Oklahoma has not done so, and thus, the Complaint must be dismissed. Defs.' Mot. at 15-18.

As defendants have explained, the only waiver of sovereign immunity even mentioned in the Complaint—Section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702—is inapplicable here for at least two reasons. First, the APA waiver applies only to suits seeking "relief other than money damages," *id.*, and Oklahoma plainly seeks money damages here, even though the Complaint refers to the requested monetary compensation as "injunctive relief." Defs.' Mot. at 16-17. The response brief reinforces this point, explicitly and repeatedly confirming throughout that Oklahoma seeks money damages. Pl. Opp. at 8, 11-12, 14. Second, the APA waiver does not apply where, as here, the actions challenged—enforcement of the nation's immigration laws—are committed to agency discretion by law. Defs.' Mot. at 17-18 (discussing 5 U.S.C. § 701(a)(2) and citing various cases holding that immigration enforcement issues are committed to agency discretion). Oklahoma's response brief does not dispute any of this. Nor does it make any attempt to identify another potentially applicable waiver of sovereign immunity.

In fact, it does not discuss sovereign immunity at all. Instead, it focuses on "qualified immunity"—an inapplicable doctrine that was not raised in the Motion. Pl. Opp. at 12-14. Qualified immunity is a distinct doctrine applicable when individual federal officers are sued in their personal capacity. *See, e.g., Kyler v. Everson*, 442 F.3d 1251, 1253 (10th Cir. 2006) (distinguishing between sovereign immunity and qualified immunity (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). Oklahoma has not sued any officers in their personal capacity here.

Instead, it has sued federal agencies and officers for actions taken in their *official capacity*. *See* Compl. ¶¶ 15-20 (naming various agency and individual officer defendants, and specifying that the latter are sued in their "official capacity"). The doctrine of qualified immunity thus has no applicability here and plaintiffs' discussion of it is neither responsive nor relevant. *See Cox v. Glanz*, 800 F.3d 1231, 1239 n.1 (10th Cir. 2015) ("The defense of qualified immunity is available only in suits against officials sued in their personal capacities, not in suits against officials sued in their official capacities." (cleaned up)); *Wyoming*, 279 F.3d at 1225 ("Sovereign immunity generally shields the United States, its agencies, and officers acting *in their official capacity* from suit." (emphasis added)).

Accordingly, given Oklahoma's failure to meet its burden to identify an applicable waiver of sovereign immunity, or to otherwise address this problem, the Complaint should be dismissed on sovereign immunity grounds as well as for lack of standing.[2] The United States simply has not waived sovereign immunity for cases like this one. *See*, *e.g.*, *Kirtz*, 601 U.S. at 48 (stating that "the United States, as sovereign, is generally immune from suits seeking money damages").

### C. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted

Apart from being jurisdictionally defective, the Complaint also fails to state a claim upon which relief can be granted and is therefore subject to dismissal under Fed. R. Civ. P. 12(b)(6) as well as under Fed. R. Civ. P. 12(b)(1). As the Motion explained, Oklahoma has not identified a

---

[2] Oklahoma's response brief mentions sovereign immunity only once before pivoting to the lengthy discussion of qualified immunity. It notes in passing that "a cause of action authorizing suit against the government may waive sovereign immunity even without a separate waiver provision" in the statute. *See* Pl. Opp. at 12 (quoting *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 53 (2024)). True enough, but unlike the plaintiffs in *Kirtz*, Oklahoma has not identified a statute creating such a cause of action. *See Kirtz*, 601 U.S. at 51-53 (citing a provision of the Fair Credit Reporting Act as authorizing suit against the federal government and thereby waiving sovereign immunity).

cause of action under federal law that would support their claim challenging the alleged failure of the Biden Administration to sufficiently secure the border and enforce the immigration laws. Once again, Oklahoma's brief does not meaningfully address this problem and it is largely unresponsive to the ground for dismissal identified in the Motion.

The response does not attempt to identify a cause of action that could justify Oklahoma's claims for relief. The Motion explained that, notwithstanding the Complaint's fleeting reference to the APA, 5 U.S.C. § 706, the Complaint does not state a cause of action under that statute. Oklahoma does not argue otherwise, thereby conceding the point. Nor does Oklahoma identify any other potentially viable cause of action. Indeed, unlike the plaintiff states in *U.S. v. Texas*, Oklahoma does not even attempt to identify an alleged violation federal law. *See U.S. v. Texas*, 599 U.S. at 674 (noting that plaintiffs alleged that the administration's arrest policy violated certain statutory provisions requiring the arrest of noncitizens). Oklahoma does make vague references to the Equal Protection Clause of the Constitution, stating at one point that it filed suit "to 'vindicate' the constitutional equal protection of all students to be afforded free and appropriate education [FAPE]." Pl. Opp. at 14. But it does not allege that defendants took any action in violation of that Clause or that Oklahoma itself has a cause of action for such a violation. *Cf. DeVillier v. Texas*, 601 U.S. 285, 291 (2024) ("Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts"). Instead, these allegations appear simply to refer to Oklahoma's own obligation under the Equal Protection Clause to provide a FAPE to undocumented children. *See* Pl. Opp. at 13 ("Oklahoma cannot deny undocumented children within its jurisdiction of their rights to equal protection."). In any event, any such Equal Protection claim is meritless. *See Brackeen*, 599 U.S. at 294-95 ("Texas also lacks standing to . . . assert equal protection claims on behalf of its citizens because '[a] State does not have standing

as *parens patriae* to bring an action against the Federal Government.'" (quoting *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 610 n.16)).

Rather than identifying a cause of action under federal law, Oklahoma focuses instead on the perceived accuracy and specificity of the factual allegations in the Complaint. Pl. Opp. at 2-4 (arguing that the allegations "rise 'above the speculative level'" under applicable pleading standards and asserting that defendants have not disputed their factual accuracy (citation omitted)). This focus misses the point—particularly on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), where allegations in the Complaint are assumed to be true. Absent some identified cause of action, there is no basis on which to test the sufficiency of Oklahoma's factual allegations. The Court cannot decide whether Oklahoma's allegations are "enough to raise a right to relief above the speculative level," *see id* at 2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), when no discernible "right to relief" has even been identified. *See*, *e.g.*, *Twombly*, 550 U.S. at 555 (complaint must give notice of "what the claim is" as well as "the grounds upon which it rests" (cleaned up)); *Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006) (to state a claim "upon which relief can be granted" there must be both a "cause of action" conferring right to seek redress and allegations that are "legally sufficient" to state the violations claimed (citation omitted)).

## CONCLUSION

For these reasons, and the reasons set forth in the Motion to Dismiss, ECF No. 7, defendants respectfully submit that the Complaint should be dismissed in its entirety.

Dated: June 20, 2025					Respectfully submitted,

					BRETT A. SHUMATE
					Assistant Attorney General

					ANDREW WARDEN
					Assistant Branch Director
					Civil Division

					  /s/ Peter M. Bryce
					PETER M. BRYCE
					Illinois Bar No. 6244216
					Senior Trial Counsel
					United States Department of Justice
					Civil Division, Federal Programs Branch
					1100 L Street, NW, Room 11106
					Washington, D.C. 20005
					Tel: (202) 616-8335
					Fax: (202) 616-8470
					E-mail: peter.bryce@usdoj.gov

					*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2025, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system.

/s/ Peter M. Bryce

Senior Trial Counsel
Federal Programs Branch
Civil Division
Department of Justice